UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MORTEZA NAGHAVI, M.D., an individual; MEDITEX CAPITAL, LLC, a Delaware limited liability company; and AMERICAN HEART TECHNOLOGIES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>BELTER HEALTH MEASUREMENT AND ANALYSIS TECHNOLOGY CO., LTD., a China corporation; EASTONE CENTURY TECHNOLOGY CO. LTD., a China corporation; XIBIN XU, an individual; WEI WANG, an individual; WENWEI TONG, an individual; FEIPENG ZHONG, an individual; ZHUHAI HENGQIN XUANYUAN NO. 8 EQUITY INVESTMENT PARTNERSHIP (LIMITED PARTNERSHIP), a China limited partnership; GF SECURITIES, a China corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 20-cv-01723-H-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT BELTER'S MOTION TO DISMISS; AND**<br><br>[Doc. No. 3.]<br><br>**(2) GRANTING DEFENDANT EASTONE'S MOTION TO DISMISS**<br><br>[Doc. No. 6.] |

///

On September 9, 2020, Defendant Belter Health Measurement and Analysis Technology Co., Ltd. filed a motion to dismiss Plaintiffs Dr. Morteza Naghavi, M.D., Meditex Capital, LLC, and American Heart Technologies, LLC's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 3.) On September 21, 2020, Defendant Eastone Century Technology Co., Ltd. filed a motion to dismiss Plaintiffs' FAC pursuant to Rule 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(b)(1) for failure to state a claim. (Doc. No. 6.) On October 5, 2020, Plaintiffs filed their responses in opposition to Defendants Belter and Eastone's motions to dismiss. (Doc. Nos. 7, 8.) On October 9, 2020, Defendants Belter and Eastone filed their replies. (Doc. Nos. 11, 12.) On October 13, 2020, the Court took the motions under submission.[1] (Doc. No. 13.) For the reasons below, the Court grants in part and denies in part Defendant Belter's motion to dismiss, and the Court grants Defendant Eastone's motion to dismiss.

## BACKGROUND

The following facts are taken from the allegations in Plaintiffs' first amended complaint. Plaintiffs Meditex Capital, LLC and American Heart Technologies, LLC are Delaware limited liability companies and are partners in a joint venture to manufacture, market, and distribute cardiovascular devices, including a cardiovascular device called "VENDYS." (Doc. No. 1-13, FAC ¶¶ 1-2, 18.) Plaintiff Dr. Morteza Neghavi is the founder and managing member of Meditex and American Heart. (Id. ¶¶ 3, 18.)

Defendant Belter Health Measurement and Analysis Technology Co., Ltd. is a manufacturer and distributor of medical devices in China. (Id. ¶¶ 4, 21.) Defendant

---

[1] In the Court's October 13, 2020, order taking the matter under submission, the Court ordered Plaintiffs to file a revised version of Exhibit G to their FAC because the current version of Exhibit G appeared to be missing a page. (Doc. No. 13.) On October 15, 2020, Plaintiffs filed a revised version of Exhibit G correcting the error. (Doc. No. 15.)

Eastone Century Technology Co., Ltd. is a publicly traded China corporation and was the 100% owner of Belter until on or about January 2020.[2]  (Id. ¶ 5.)

On March 18, 2016, Belter and Meditex entered into a "Manufacturing, Marketing, Sales and Distribution Agreement" ("the March 18, 2016 agreement") wherein Meditex granted Belter exclusive rights to market, distribute, and sell VENDYS in China.  (Doc. No. 1-13, FAC ¶ 21, Ex. B at 1, 2 § 2.4.)  On February 10, 2017, Belter and Meditex entered into an amendment to the March 18, 2016 agreement ("the February 10, 2017 agreement").  (Id. ¶ 23, Ex. D.)

On May 2, 2017, Belter and Meditex entered into another agreement entitled the "Exclusive China Marketing, Sales, and Distribution Agreement" ("the May 2, 2017 agreement").  (Id. ¶ 24; Doc. No. 14 Ex. G.)  The May 2, 2017 agreement provides: "This contract substitutes all terms related to MARKETING, SALES, and DISTRIBUTION AGREEMENT previously signed by the parties on March 18th, 2016."  (Doc. No. 14, Ex. G at 1.)  Plaintiffs allege that the May 2, 2017 agreement contains certain minimum sales requirements, and that Defendant Belter has failed to meet those minimum sales requirements.  (Doc. No. 1-13, FAC ¶¶ 24, 36; see Doc. No. 14, Ex. G at 3 § 5, Ex. B.)

On August 10, 2018, Belter and Meditex entered into an additional amendment agreement ("the August 10, 2018 amendment").  (Doc. No. 1-13, FAC ¶ 32, Ex. K.)  Plaintiffs allege that under the terms of the August 10, 2018 amendment, Belter was required to pay Meditex $250,000 for an outstanding licensing fee, and Belter was required to provide additional VENDYS units to Plaintiffs in the United States.  (Id. ¶ 32.)  Plaintiffs allege that although Defendants Belter and Eastone have paid $100,000 of the outstanding $250,000, they have failed to pay the remaining $150,000 of the licensing fee and have not delivered the required VENDYS units.  (Id. ¶ 33.)

---

[2]   On or about January 2020, Eastone sold its ownership interest in Belter to Zhuhai Hengqin Xuanyuan No. 8 Equity Investment Partnership.  (Doc. No. 1-13, FAC ¶¶ 10, 62, 64.)

On November 26, 2019, Plaintiffs Dr. Naghavi, Meditex, and American Heart Technologies filed a complaint in the Superior Court of California, County of San Diego. (Doc. No. 1, Notice of Removal ¶ 1.) On February 7, 2020, Plaintiffs filed a first amended complaint in state court against Defendants Belter, Eastone, Xibin Xu, Wei Wang, Wenwei Tong, Feipeng Zhong, Zhuhai Hengqin Xuanyuan, and GF Securities. (Doc. No. 1-13, FAC.) In the FAC, Plaintiffs allege claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud by false promise; (4) to set aside a voidable transaction; and (5) conspiracy. (Id. ¶¶ 34-72.)

On September 2, 2020, Defendants Belter and Eastone removed the action from state court to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. No. 1, Notice of Removal.) On October 6, 2020, the Court granted Defendant GF Securities's motion to dismiss, and the Court dismissed Defendant GF Securities from the action. (Doc. No. 10.) By the present motions: (1) Defendant Eastone moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss Plaintiffs' complaint for lack of personal jurisdiction; and (2) Defendants Belter and Eastone both move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' complaint for failure to state a claim. (Doc. No. 3-1, 6-1.)

**DISCUSSION**

**I.     Legal Standards for a Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief containing "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the claimant. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But, a court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC

v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

## II. Analysis

### A. Plaintiffs' Claim for Breach of Contract

In the FAC, Plaintiffs allege a claim for breach of contract against Defendants Belter and Eastone. (Doc. No. 1-13, FAC ¶¶ 34-44.) Defendants Belter and Eastone move to dismiss this claim for failure to state a claim. (Doc. No. 3-1 at 8-15; Doc. No. 6-1 at 18.) Under Texas law, "[t]he elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach."[3] Brooks v. Excellence Mortg., Ltd., 486 S.W.3d 29, 36 (Tex. App. 2015) (internal quotation marks omitted) (quoting McLaughlin, Inc. v. Northstar Drilling Techs., Inc., 138 S.W.3d 24, 27 (Tex. App. 2004)).

#### i. Defendant Eastone

As an initial matter, in their opposition, Plaintiffs state that they agree that dismissal of this cause of action as to Defendant Eastone is appropriate. (Doc. No. 8 at 5.) As such, the Court dismisses Plaintiffs' claim for breach of contract against Defendant Eastone.

#### ii. Defendant Belter

With respect to Defendant Belter, Plaintiffs allege the existence of several valid contracts between Plaintiff Meditex and Defendant Belter, including the May 2, 2017 agreement and the August 10, 2018 amendment. (Doc. No. 1-13, FAC ¶¶ 21, 23, 24, 27, 35, Exs. B, D, K; Doc. No. 14, Ex. G.) Plaintiffs allege that Plaintiff Meditex has performed all of its obligations under these agreements. (Id. ¶ 35.) Plaintiffs allege that Defendant Belter breached the May 2, 2017 agreement by failing to meet the minimum sales requirements set forth in that agreement. (Id. ¶ 36.) In addition, Plaintiffs allege that Belter breached the August 10, 2018 amendment by failing to pay the remaining $150,000

---

[3] The parties agree that Plaintiffs' claim for breach of contract is governed by Texas law. (See, e.g., Doc. No. 3-1 at 15; Doc. No. 7 at 13.)

payment due for the outstanding licensing fee and by failing to deliver 249 units of Vendys. (Id. ¶¶ 38-39.) Plaintiffs allege that they have suffered monetary damages as a result of these breaches. (Id. ¶¶ 37, 40-41.) Thus, Plaintiffs have adequately alleged each of the required elements for stating a claim for breach of contract against Defendant Belter.

Defendant Belter argues that Plaintiffs cannot allege a claim for breach of the May 2, 2017 agreement because the terms of that agreement were superseded by the August 10, 2018 amendment. (Doc. No. 3-1 at 8-10.) Plaintiffs' claim for breach of the May 2, 2017 agreement is based on Defendant Belter's alleged breach of the minimum sales requirements set forth in that agreement. (Doc. No. 1-13, FAC ¶ 36; see Doc. No. 14 Ex. G § 5.) Thus, Belter's argument turns on whether the provisions in the August 10, 2018 amendment supersede the minimum sales requirements provision set forth in the May 2, 2017 agreement.

"Generally, when parties entered into a second contract dealing with same subject matter as a prior contract without stating whether the second contract operates as a discharge of or substitute for the first, the two contracts must be interpreted together and the later contract prevails to the extent they are inconsistent; provisions not in conflict with the subsequent contract remain enforceable." Allen Drilling Acquisition Co. v. Crimson Expl. Inc., 558 S.W.3d 761, 773 (Tex. App. 2018). Consistent with this principle, section B of the August 10, 2018 amendment states: "All other terms and conditions of original agreement (MANUFACTURING, MARKETING, SALES, AND DISTRIBUTION AGREEMENT) and First and Second Amendment that do not address the above items, remain as is." (Doc. No. 1-15, FAC Ex. K § B.)

Belter fails to identify any provision in the August 10, 2018 amendment that expressly supersedes or addresses the minimum sales requirements set forth in the prior agreement. Indeed, in its motion to dismiss, Belter states that the August 10, 2018 agreement does not include any minimum sales amounts. (Doc. No. 3-1 at 9.) As such, in order for Belter to establish that the minimum sales requirements provision was superseded, Belter must demonstrate that the minimum sales requirements provision is

inconsistent with the terms contained in the August 10, 2018 agreement. See Allen Drilling Acquisition, 558 S.W.3d at 773. Belter has failed to do so. In an effort to demonstrate inconsistencies, Belter focuses on the provisions in the August 10, 2018 amendment that amend Belter's payment obligations under the parties' agreements. (See Doc. No. 3-1 at 9-10; Doc. No. 11 at 8-10.) But Belter fails to adequately explain how these revised payment provisions are inconsistent with the minimum sales requirements set forth in the prior May 2, 2017 agreement. The Court notes that in the May 2, 2017 agreement, the minimum sales requirements are contained in a separate and different section from the payment provisions. (Compare Doc. No. 14 Ex. G § 4 with id. § 5.) As such, Defendant Belter has failed to establish at this stage in the proceedings that the minimum sales requirements set forth in the May 2, 2017 agreement were superseded by the August 10, 2018 amendment.

Defendant Belter also argues that Plaintiffs cannot allege a claim for breach of the May 2, 2017 agreement because Plaintiffs have failed to allege that a necessary condition precedent has been satisfied. (Doc. No. 3-1 at 10.) Specifically, Belter argues that under the term of the May 2, 2017 agreement, any minimum payment or sales requirements would only be triggered in the event of approval by the Chinese Food and Drug Administration ("CFDA"), meaning that CFDA approval is a condition precedent to its obligations under the contract. (Id.) Belter further argues that because Plaintiffs have failed to allege that the CFDA has approved the sale of VENDYS units in China, Plaintiffs' claim for breach of the minimum sales requirements set forth in the May 2, 2017 agreement fails as a matter of law. (Id.) In response, Plaintiffs argue that CFDA approval is not a condition precedent under the terms of the May 2, 2017 agreement. (Doc. No. 7 at 12.)

"'A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation.'" Solar Applications Eng'g, Inc. v. T.A. Operating Corp., 327 S.W.3d 104, 108 (Tex. 2010). "In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." Criswell v. European Crossroads Shopping Ctr., Ltd.,

792 S.W.2d 945, 948 (Tex. 1990). Texas courts have explained that conditions precedent are "disfavored," and courts should not "construe a contract provision as a condition precedent unless compelled to do so by language that may be construed no other way." Cajun Constructors, Inc. v. Velasco Drainage Dist., 380 S.W.3d 819, 826 (Tex. App. 2012) (citing Criswell, 792 S.W.2d at 948).

In the provision at issue, the May 2, 2017 agreement provides:

> As part of this exclusive marketing, sales, and distribution agreement, Belter commits to a minimum amount of sales revenue and detailed marketing plans over five [*sic*] from the date of this Agreement (see Exhibit B). Belter shall try its best to obtain CFDA approval and start selling. Belter is responsible for delivering the minimum amount of sales regardless of circumstances. If Belter breaches the contract, Belter shall be fully liable for the upfront fee and minimum sales as the agreed damages defined upfront.

(Doc. No. 14 Ex. G at 3 § 5.) Exhibit B to the May 2, 2017 agreement further provides:

> The minimum sales amount is USD5,250,000.000 for the first 2 years post CFDA approval, the minimum sales amount for year 3 will be USD3,500,000.00, the minimum sales amount for year 4 will be USD5,250,000.00, and the minimum sales amount for year 5 will be USD7,000,000.

(Id. Ex. G at 5 Ex. B.)

In reviewing the above provisions, the Court acknowledges that Exhibit B to the May 2, 2017 sets forth a minimum sales amount of $5,250,000 for "the first 2 years post CFDA approval." (Id.) But Exhibit B does not use the phrase "post CFDA approval" when setting forth the minimum sales amounts for years 3, 4, and 5. (See id.) Further, section 5 of the agreement states that the "minimum amount of sales" is "over five [sic] from the date of this agreement." (Id. Ex. G at 3 § 5; see also id. at 1 § 1 ("The term of this Agreement shall be for five years from the execution of the Agreement.").) In addition, section 5 also states that: "Belter is responsible for delivering the minimum amount of sales regardless of circumstances." (Id. Ex. G at 3 § 5.) Thus, at this stage in the proceedings, Belter has failed to demonstrate that the May 2, 2017 agreement unambiguously requires CFDA approval as a condition precedent for all of the minimum sales requirements set

forth in the agreement. As such, Belter has failed to establish as a matter of law that Plaintiffs' claim for breach of contract should be dismissed because they have failed to allege that CFDA approval has occurred. See Lloyd v. Navy Fed. Credit Union, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *7 (S.D. Cal. Apr. 12, 2018) ("Where a contract's terms are unambiguous, resolution on a motion to dismiss is proper. However, a breach of contract claim may not be dismissed for failure to state a claim if the contract's terms are ambiguous." (citations omitted)); see, e.g., Consul Ltd. v. Solide Enterprises, Inc., 802 F.2d 1143, 1149 (9th Cir. 1986); Monaco v. Bear Stearns Residential Mortg. Corp., 554 F. Supp. 2d 1034, 1040-42 (C.D. Cal. 2008).

Finally, with respect to both the May 2, 2017 agreement and the August 10, 2018 amendment, in its motion to dismiss, Defendant Belter argues that Plaintiffs are not entitled to certain damages alleged in the FAC. (Doc. No. 3-1 at 11-15.) In response, Plaintiffs argue that whether they are entitled to the exact amount of damages alleged in the complaint is immaterial at the motion to dismiss stage. (Doc. No. 7 at 13.) The Court agrees.

Defendant Belter filed a Rule 12(b)(6) motion to dismiss. Thus, the inquiry currently before the Court is whether Plaintiffs adequately state a claim for relief. See Conservation Force, 646 F.3d at 1241. As explained above, in the FAC, Plaintiffs adequately allege each of the elements of a claim for breach of contract, including the damages element. See supra. Defendant Belter may dispute whether Plaintiffs allege the correct amount of damages they would be entitled to based on the alleged breaches. But that does not change the fact that Plaintiffs have alleged that they have suffered damages from the breach.

For example, with respect to the August 10, 2018 amendment, Plaintiffs allege that they have been damaged by Defendant Belter's breach of that agreement in the amount of $150,000 for the payment due for the outstanding licensing fee plus a penalty amount of $688,500. (Doc. No. 1-13, FAC ¶¶ 38, 40.) In its motion to dismiss, Belter contends that Plaintiffs are not entitled to the purported $688,500 penalty amount. (Doc. No. 3-1 at 14-15.) But Belter does not challenge Plaintiffs' allegations regarding the $150,000 fee owed.

(See id.)  Thus, even assuming Belter is correct, Plaintiffs have still adequately stated a claim for breach of the August 10, 2018 amendment based on the damages allegations related to the $150,000 licensing fee owed.

In sum, Plaintiffs have adequately alleged each of the required elements for stating a claim for breach of contract against Defendant Belter.  As such, the Court declines to dismiss Plaintiffs' claim for breach of contract against Defendant Belter. [4]

### B. Plaintiffs' Claim for Fraud (False Promise)

In the FAC, Plaintiffs allege a claim for fraud by false promise against Defendants Belter and Eastone.  (Doc. No. 1-13, FAC ¶¶ 52-57.)  Defendants Belter and Eastone move to dismiss this claim for failure to state a claim.  (Doc. No. 3-1 at 16-18; Doc. No. 6-1 at 18-20.)

Defendants Belter and Eastone argue that Plaintiffs' claim for fraud should be dismissed because (1) Plaintiffs have failed to adequately allege fraudulent intent, and (2) Plaintiffs have failed to satisfy the heightened pleading standards for alleging a claim of fraud against a corporation.  (Id.)  In addition, Defendant Eastone argues that Plaintiffs' claim for fraud against it should be dismissed because the Court lacks personal jurisdiction over Eastone with respect to this claim.  (Doc. No. 6-1 at 10-14.)  In response, Plaintiffs contend that they have alleged sufficient facts to state a claim for fraud.  (Doc. 7 at 16; Doc. No. 8 at 5-7.)  Nevertheless, Plaintiffs request leave to amend their claim for fraud in order to include more detailed and specific allegations in support of this claim.  (Id.)

The elements of fraud are (1) a material false representation, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4) that the other party 'actually and justifiably relied upon,' causing him injury."[5]  Garcia v.

---

[4]   The Court notes that its denial of Belter's motion to dismiss is without prejudice to Belter raising these arguments regarding Plaintiffs' breach of contract claim at a later stage in the proceedings, such as through a motion for summary judgment.

[5]   With respect to Plaintiffs' claim for fraud, Plaintiffs cite to Texas law, and Defendants cite to California law.  (See, e.g., Doc. No. 3-1 at 16-17; Doc. No. 6-1 at 19-20; Doc. No. 7 at 16.)  The Court

Vera, 342 S.W.3d 721, 725 (Tex. App. 2011) (citing Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001)); see also Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1992). "Fraud by false promise" is a theory "by which the misrepresentation element of fraud can be proven." Columbia/HCA Healthcare Corp. v. Cottey, 72 S.W.3d 735, 744 (Tex. App. 2002). "A promise to do an act (or . . . refrain from doing an act) in the future is actionable fraud only when made with the intention, design and purpose of deceiving, and with no intention of performing the act. Plaintiff must show that the promise was false at the time it was made." Airborne Freight Corp. v. C.R. Lee Enterprises, Inc., 847 S.W.2d 289, 294 (Tex. App. 1992); see also Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 158 (1991).

Further, Federal Rule of Civil Procedure "9(b)'s particularity requirement applies to state-law causes of action." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Under Federal Rule of Civil Procedure 9, a plaintiff must plead fraud with particularity. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" Id. (quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994)). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud" are not. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).

In the FAC, Plaintiff alleges "Defendants Tong, Zhong, Xu, Wang, Belter and Eastone never intended to perform their promises when they made them." (Doc. No. 1-13, FAC ¶ 55.) Defendants Belter and Eastone argue that this conclusory allegation is insufficient to properly state a claim for fraud by false promise. (Doc. No. 3-1 at 16-17;

---

need not resolve this conflict in law between the parties because in analyzing Plaintiffs' claim for fraud, the Court will cite to both Texas law and California law, and there does not appear to be a material difference between the two with respect to the elements at issue. See infra.

Doc. No. 6-1 at 19-20.) The Court agrees. "'Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation.'" SVGRP LLC v. Sowell Fin. Servs., LLC, No. 5:16-CV-07302-HRL, 2017 WL 5495987, at *6 (N.D. Cal. Nov. 16, 2017) (quoting UMG Recordings, Inc. v. Global Eagle Entertainment, Inc., 117 F. Supp.3d 1092, 1109-10 (C.D. Cal. 2015)); accord Glob. Plastic Sheeting v. Raven Indus., No. 17-CV-1670 DMS (KSC), 2018 WL 3078724, at *4 (S.D. Cal. Mar. 14, 2018). Here, Plaintiffs have failed to point to any factual allegations in the FAC that could show that Defendants harbored an intention not to perform under the contract at the time of formation. As such, Plaintiffs have failed to adequately allege the "intent" element of their fraud claim.

In addition, with respect to Defendant Eastone, Plaintiffs have also failed to adequately allege that Eastone may be directly liable for the alleged misrepresentations. Plaintiffs argue that their allegations are sufficient to establish direct liability as to Eastone because they allege in the FAC that, during the relevant times, in addition to being managers of Belter, Defendant Tong was a member of the Board of Directors for Eastone and Defendant Zhong was the Chairman of the Board of Directors for Eastone. (Doc. No. 8 at 6; see Doc. No. 1-13, FAC ¶¶ 6-7, 29.) But a mere allegation that a corporate director/officer held positions with both a parent and its subsidiary without more is insufficient to establish direct liability as to the parent. See United States v. Bestfoods, 524 U.S. 51, 69 (1998) ("'[D]irectors and officers holding positions with a parent and its subsidiary can and do "change hats" to represent the two corporations separately, despite their common ownership.' . . . [C]ourts generally presume 'that the directors are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary.'"); whiteCryption Corp. v. Arxan Techs., Inc., No. 15-CV-00754-WHO, 2015 WL 3799585, at *2 (N.D. Cal. June 18, 2015) ("[P]arent corporations are held directly or indirectly liable under California law for the acts of their subsidiaries only in unusual situations."). Because the FAC does not include any allegations stating that Defendants Tong and Zhong were specifically acting on behalf of Eastone when the representations at issue were made,

Plaintiffs have failed to adequately allege direct liability as to Eastone for the alleged misrepresentations.[6] See, e.g., Bastidas v. Good Samaritan Hosp., No. C 13-04388 SI, 2014 WL 3362214, at *4-5 (N.D. Cal. July 7, 2014) (dismissing claim against parent company where the plaintiff failed to allege facts that would support direct liability for the parent company).

In sum, Plaintiffs have failed to adequately state a claim for fraud against Defendants Belter and Eastone, and the Court dismisses Plaintiffs' claim for fraud. Because Plaintiffs requested that they be given leave to amend this claim to add additional details, and this claim was originally filed in state court and, thus, was not subject to the heightened pleading requirements of Rule 9(b), the Court grants Plaintiffs leave to amend their fraud claim.

C.   Plaintiffs' Remaining Claims

In the FAC, Plaintiffs also allege against Defendants Belter and Eastone: (1) a claim for breach of the implied covenant of good faith and fair dealing; (2) a claim to set aside a voidable transaction; and (3) a claim for conspiracy. (Doc. No. 1-13, FAC ¶¶ 45-51, 58-72.) Defendants Belter and Eastone move to dismiss these claims for failure to state a claim. (Doc. No. 3-1 at 15-16, 18-20; Doc. No. 6-1 at 18, 20-22.)

In their opposition, Plaintiffs state that they agree that dismissal of these causes of action against Belter and Eastone is appropriate. (Doc. No. 7 at 16; Doc. No. 8 at 5.) As such, the Court dismisses Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs' claim to set aside a voidable transaction; and Plaintiffs' claim

---

[6]   For the same reason, Plaintiffs have also failed to adequately allege that the Court has specific personal jurisdiction over Eastone with respect to this claim. See GEC US 1 LLC v. Frontier Renewables, LLC, No. 16-CV-1276 YGR, 2016 WL 4677585, at *11-12 (N.D. Cal. Sept. 7, 2016) (dismissing parent company for lack of personal jurisdiction where the plaintiff failed to demonstrate that the dual officers at issue were acting on behalf of the parent company); Rojas v. Hamm, No. 18-CV-01779-WHO, 2019 WL 3779706, at *10 (N.D. Cal. Aug. 12, 2019) (same); Haller v. Advanced Indus. Computer, Inc., No. CV-13-02398-PHX-DGC, 2015 WL 854954, at *4 (D. Ariz. Feb. 27, 2015) (same and explaining that "[e]vidence beyond common officers is required"). In their opposition, Plaintiffs clarify that they are not asserting that the Court has general personal jurisdiction over Defendant Eastone. (Doc. No. 8 at 6.)

14

for conspiracy against Defendants Belter and Eastone.

## CONCLUSION

For the reasons above, the Court grants in part and denies in part Defendant Belter's motion to dismiss, and the Court grants Defendant Eastone's motion to dismiss. Specifically:

    1.    The Court declines to dismiss Plaintiffs' claim for breach of contract against Defendant Belter.

    2.    The Court dismisses Plaintiffs' claim for breach of contract against Defendant Eastone without leave to amend.

    3.    The Court dismisses Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing; to set aside a voidable transaction; and conspiracy against Defendants Belter and Eastone without leave to amend.

    4.    The Court dismisses Plaintiffs' clam for fraud against Defendants Belter and Eastone without prejudice, and the Court grants Plaintiffs leave to amend their claim for fraud. Plaintiffs must file their second amended complaint within **30 days** from the date this order is filed. Any amended complaint must cure the deficiencies noted in this order and must comply with Federal Rules of Civil Procedure 8 and 9.

**IT IS SO ORDERED.**

DATED: October 20, 2020

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT