1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

DR. MORTEZA NAGHAVI, M.D., an
individual; MEDITEX CAPITAL, LLC, a
Delaware limited liability company; and
AMERICAN HEART TECHNOLOGIES,
LLC, a Delaware limited liability
company,

13
14
15

Plaintiffs,

16

v.

17
18

BELTER HEALTH MEASUREMENT
AND ANALYSIS TECHNOLOGY CO.,
LTD., a China corporation; EASTONE
CENTURY TECHNOLOGY CO. LTD., a
China corporation; XIBIN XU, an
individual; WEI WANG, an individual;
WENWEI TONG, an individual;
FEIPENG ZHONG, an individual;
ZHUHAI HENGQIN XUANYUAN NO.
8 EQUITY INVESTMENT
PARTNERSHIP (LIMITED
PARTNERSHIP), a China limited
partnership; GF SECURITIES, a China
corporation; and DOES 1 through 20,
inclusive,

19
20
21
22
23
24
25
26
27

Defendants.

28

Case No.:  20-cv-01723-H-KSC

**ORDER:**

**(1) GRANTING DEFENDANT
EASTONE'S MOTION TO DISMISS
FOR LACK OF PERSONAL
JURSIDICTION; AND**

**(2) DENYING DEFENDANT
BELTER'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

[Doc. Nos. 17, 18.]

On December 3, 2020, Defendant Eastone Century Technology Co., Ltd. filed a motion to dismiss Plaintiffs Dr. Morteza Naghavi, M.D., Meditex Capital, LLC, and American Heart Technologies, LLC's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim. (Doc. No. 17.) On December 3, 2020, Defendant Belter Health Measurement and Analysis Technology Co., Ltd. filed notice of joinder in the Rule 12(b)(6) portion of Defendant Eastone's motion to dismiss. (Doc. No. 18.) On December 14, 2020, the Court took the matter under submission. (Doc. No. 19.) On December 28, 2020, Plaintiffs filed a response in opposition to the motion to dismiss. (Doc. No. 20.) On January 4, 2021, Defendants filed their replies. (Doc. No. 21, 22.) For the reasons below, the Court grants Defendant Eastone's motion to dismiss for lack of personal jurisdiction, and the Court denies Defendant Belter's motion to dismiss for failure to state a claim.

## **BACKGROUND**

The following facts are taken from the allegations in Plaintiffs' second amended complaint. Plaintiffs Meditex Capital, LLC and American Heart Technologies, LLC are Delaware limited liability companies and are partners in a joint venture to manufacture, market, and distribute cardiovascular devices, including a cardiovascular device called "VENDYS." (Doc. No. 16, SAC ¶¶ 1-2, 17.) Plaintiff Dr. Morteza Naghavi is the founder and managing member of Meditex and American Heart. (Id. ¶¶ 3, 17.)

Defendant Belter Health Measurement and Analysis Technology Co., Ltd. is a manufacturer and distributor of medical devices in China. (Id. ¶¶ 4, 18-20.) Defendant Eastone Century Technology Co., Ltd. is a publicly traded China corporation and was the 100% owner of Belter until on or about January 2020.[1] (Id. ¶ 5.)

On March 18, 2016, Belter and Meditex entered into a "Manufacturing, Marketing, Sales and Distribution Agreement" ("the March 18, 2016 agreement") wherein Meditex

---

[1]    On or about January 2020, Eastone sold its ownership interest in Belter to Zhuhai Hengqin Xuanyuan No. 8 Equity Investment Partnership. (Doc. No. 16, SAC ¶¶ 10, 73.)

granted Belter exclusive rights to market, distribute, and sell VENDYS in China.  (Doc. No. 16, SAC ¶ 21, Ex. B at 1, 2 § 2.4.)  On February 10, 2017, Belter and Meditex entered into an amendment to the March 18, 2016 agreement ("the February 10, 2017 agreement"). (Id. ¶ 23, Ex. D.)

On May 2, 2017, Belter and Meditex entered into another agreement entitled the "Exclusive China Marketing, Sales, and Distribution Agreement" ("the May 2, 2017 agreement").  (Id. ¶ 24; Doc. No. 14 Ex. F.)  The May 2, 2017 agreement provides: "This contract substitutes all terms related to MARKETING, SALES, and DISTRIBUTION AGREEMENT previously signed by the parties on March 18th, 2016." (Id., Ex. F at 1.) Plaintiffs allege that the May 2, 2017 agreement contains certain minimum sales requirements, and that Defendant Belter has failed to meet those minimum sales requirements.  (Id. ¶¶ 24, 35; see id., Ex. F at 3 § 5, Ex. B.)

On August 10, 2018, Belter and Meditex entered into an additional amendment agreement ("the August 10, 2018 amendment").  (Doc. No. 16, SAC ¶ 31, Ex. J.)  Plaintiffs allege that under the terms of the August 10, 2018 amendment, Belter was required to pay Meditex $250,000 for an outstanding licensing fee, and Belter was required to provide additional VENDYS units to Plaintiffs in the United States.  (Id. ¶ 31.)  Plaintiffs allege that although Defendants Belter and Eastone have paid $100,000 of the outstanding $250,000, they have failed to pay the remaining $150,000 of the licensing fee and have not delivered the required VENDYS units.  (Id. ¶ 32.)

On November 26, 2019, Plaintiffs Dr. Naghavi, Meditex, and American Heart Technologies filed a complaint in the Superior Court of California, County of San Diego. (Doc. No. 1, Notice of Removal ¶ 1.)  On February 7, 2020, Plaintiffs filed a first amended complaint in state court against Defendants Belter, Eastone, Xibin Xu, Wei Wang, Wenwei Tong, Feipeng Zhong, Zhuhai Hengqin Xuanyuan, and GF Securities.  (Doc. No. 1-13, FAC.)  In the FAC, Plaintiffs alleged claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud by false promise; (4) to set aside a voidable transaction; and (5) conspiracy.  (Id. ¶¶ 34-72.)

On September 2, 2020, Defendants Belter and Eastone removed the action from state court to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. No. 1, Notice of Removal.) On October 6, 2020, the Court granted Defendant GF Securities's motion to dismiss, and the Court dismissed Defendant GF Securities from the action. (Doc. No. 10.) On October 20, 2020, the Court granted in part and denied in part Defendant Belter's motion to dismiss, and the Court granted Defendant Eastone's motion to dismiss. (Doc. No. 15.) Specifically, the Court dismissed Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing; to set aside a voidable transaction; and conspiracy without leave to amend; the Court dismissed Plaintiff's claim for breach of contract against Defendant Eastone without leave to amend; and the Court dismissed Plaintiff's claim for fraud with leave to amend. (Id. at 15.)

On November 19, 2020, Plaintiffs filed a second amended complaint against Defendants Belter, Eastone, Xu, Wang, Tong, and Zhong, alleging: (1) a claim for breach of contract against Belter; and (2) a claim for fraud against all the Defendants.[2] (Doc. No. 16.) By the present motion: (1) Defendant Eastone moves to dismiss Plaintiffs' fraud claim pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction; and Defendants Eastone and Belter move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's fraud claim for failure to state a claim. (Doc. Nos. 17-1, 18.)

///

---

[2]    The Court notes that the second amended complaint appears to re-allege Plaintiffs' claim for breach of contract against Defendant Eastone. (See Doc. No. 16, SAC ¶¶ 33-43.) This would appear to be an error as Plaintiffs previously agreed to dismiss Defendant Eastone from their breach of contract claim, (see Doc. No. at 8 at 5), and based on that representation, the Court dismissed Plaintiffs' claim for breach of contract against Eastone without leave to amend. (Doc. No. 15 at 6, 15.) Nevertheless, to the extent this was not an error, the Court strikes Plaintiffs' claim for breach against Defendant Eastone from the second amended complaint as that claim was dismissed without leave to amend in the Court's October 20, 2020 order. (See id.) In addition, the Court notes that the second amended complaint also names Zhuhai Hengqin Xuanyuan No. 8 Equity Investment Partnership as an additional defendant, but the second amended complaint does not actually allege any causes of action against that defendant. (See Doc. No. 16, SAC ¶¶ 10, 33-86.)

## DISCUSSION

### I.  Defendant Eastone's Rule 12(b)(2) Motion to Dismiss

#### A.  Legal Standards for a Rule 12(b)(2) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  A plaintiff bears the burden of establishing the Court's personal jurisdiction over a defendant.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  "[T]he plaintiff need only make a prima facie showing of jurisdictional facts."  Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1106 (9th Cir. 2020) (citations omitted).  "Unless directly contravened, [the plaintiff's] version of the facts is taken as true," and disputed facts must be resolved in the plaintiff's favor.  Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003) (citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003)).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Second, the exercise of jurisdiction must comport with federal due process."  Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (quoting Chan v. Society Expeditions, 39 F.3d 1398, 1404-05 (9th Cir. 1994)).  California's long-arm statute provides that a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States."  Cal. Civ. Proc. Code § 410.10.  Thus, California's long-arm statute permits courts to exercise personal jurisdiction within the limits of due process.  Daimler AG v. Bauman, 571 U.S. 117, 125 (2014).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  Due process requires courts exercise personal jurisdiction over a nonresident defendant only if the defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit

20-cv-01723-H-KSC

does not offend 'traditional notions of fair play and substantial justice.'" <u>Axiom Foods, Inc. v. Acerchem Int'l, Inc.</u>, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting <u>Int'l Shoe</u>, 326 U.S. at 316).

Personal jurisdiction may be either general or specific, or both. <u>Bristol-Myers Squibb Co. v. Superior Court</u>, 137 S. Ct. 1773, 1779-80 (2017). Here, Plaintiffs do not contend the Court has general jurisdiction over Defendant Eastone. (Doc. No. 20 at 7.) Plaintiffs only assert that there is specific jurisdiction over Defendant Eastone. (<u>Id.</u>)

B.   <u>Analysis</u>

A court may exercise specific personal jurisdiction over a nonresident defendant if the following requirements are met: (1) the defendant "purposefully direct[ed]" his or her activities to the forum state or "purposefully avail[ed]" himself or herself "of the privileges of conducting activities in the forum"; (2) the plaintiff's claim "arises out of or relates to the defendant's forum-related activities"; and (3) the court's exercise of jurisdiction is reasonable. <u>Axiom Foods</u>, 874 F.3d at 1068 (quoting <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test." <u>Id.</u> (quoting <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004)). Then, the defendant bears the burden to "present a compelling case" that jurisdiction would be unreasonable. <u>Id.</u> at 1068-69 (quoting <u>Schwarzenegger</u>, 374 F.3d at 802). "'If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.'" <u>AMA Multimedia, LLC v. Wanat</u>, 970 F.3d 1201, 1208 (9th Cir. 2020) (quoting <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 270 (9th Cir. 1995)).

The form of the inquiry into the first prong of this test "depends on the nature of the claim at issue." <u>Picot v. Weston</u>, 780 F.3d 1206, 1212 (9th Cir. 2015). "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." <u>Glob. Commodities</u>, 972 F.3d at 1107 (citing <u>Picot</u>, 780 F.3d at 1212; <u>Schwarzenegger</u>, 374 F.3d at 802). At their core, these tests "ask whether defendants have

voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.'"  Id. (quoting Burger King, 471 U.S. at 474).  The only claim in this action asserted against Defendant Eastone is a claim for fraud, which is a tort.  Thus, the Court utilizes the purposeful direction test to analyze Plaintiffs' claim for fraud against Defendant Eastone.[3]  See, e.g., Marlyn Nutraceuticals, Inc. v. Improvita Health Prod., 663 F. Supp. 2d 841, 850 (D. Ariz. 2009) (analyzing fraud claim "under the purposeful-direction effects test").

     i.  The Purposeful Direction Test

  The Ninth Circuit assesses whether a defendant's actions constitute a purposeful direction using the "effects" test derived from Calder v. Jones, 465 U.S. 783 (1984).  Picot, 780 F.3d at 1213-14; Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017).  Under this purposeful direction test, "'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"  AMA Multimedia, 970 F.3d at 1209 (quoting Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011)).

---

[3] The Court notes that, in certain circumstances, the Ninth Circuit has applied the purposeful availment test to fraud claims when the suit at issue includes both a breach of contract claim and a fraud claim and the suit overall sounds "primarily in contract."  See, e.g., HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp., 417 F. App'x 664, 665 (9th Cir. 2011) ("Suits that include both a breach of contract claim and a fraud claim may 'sound primarily in contract' when the alleged fraud is merely the representations in the contract that gave rise to the breach."); Boschetto v. Hansing, 539 F.3d 1011, 1016–19 (9th Cir. 2008) (applying purposeful availment test to a complaint that contained claims for breach of contract and fraud).  Nevertheless, application of the purposeful availment test does not appear to be appropriate here as Plaintiffs have dropped their claim for breach of contract against the defendant at issue Defendant Eastone, and Plaintiffs do not assert that Defendant Eastone was a party to any of the contracts at issue.  (See Doc. No. 8 at 5; Doc. No. 15 at 6, 15; Doc. No. 16, SAC ¶¶ 22-26, 31.)  Moreover, both parties assert that Plaintiffs' fraud claim against Defendant Eastone should be analyzed under the purposeful direction test.  (Doc. No. 17-1 at 8-9; Doc. No. 20 at 5-6.)  As such, the Court will analyze Plaintiffs' fraud claim against Defendant Eastone under the purposeful direction test.

20-cv-01723-H-KSC

Defendant Eastone argues that Plaintiff cannot satisfy the three-part purposeful direction test because Plaintiff cannot satisfy the "expressly aimed" element of the test. (Doc. No. 17-1 at 8-10.)  The express aiming prong of the purposeful direction test "asks whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" Picot, 780 F.3d at 1214.  This analysis "must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." Id.; see Walden v. Fiore, 571 U.S. 277, 285 (2014) ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").  "Thus, a 'mere injury to a forum resident is not a sufficient connection to the forum.'" Picot, 780 F.3d at 1214 (quoting Walden, 571 U.S. at 290).  Rather, the plaintiff must show that the "defendant's intentional conduct that is aimed at, and creates the necessary contacts with, the forum state." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1209 (9th Cir. 2020).

In the SAC, Plaintiff alleges two instances of fraudulent conduct by Defendant Eastone.  (See Doc. No. 16, SAC ¶¶ 57-80.)  According to the allegations in the complaint, all of the fraudulent conduct at issue occurred in China, specifically during meetings in China in early August 2018 between Dr. Naghavi and Defendants Tong, Zhong, Xu, and Wang and during a meeting in China in August 2019 between Dr. Naghavi and Defendants Zhong and Tong.  (See id. ¶¶ 57, 60, 61, 75, 76.)  Eastone argues that because all of the conduct at issue took place in China, none of the conduct was expressly aimed at California. (Doc. No. 17-1 at 9-10.)  Eastone argues that the only alleged connection between itself and California is that Plaintiffs are located in California and that Eastone allegedly knew this, which is insufficient to establish express aiming under Walden.  (Id. at 10.)  The Court agrees with Eastone.

Under the allegations set forth in the SAC, all of the conduct at issue took place in China and was related to Plaintiffs' and Belter's business dealings in China, specifically the manufacturing, marketing, and distribution of Plaintiffs' VENDYS product in China. (See Doc. No. 16, FAC ¶¶ 57-80.)  Plaintiffs may assert that Eastone knew that Plaintiffs

8

are located in California, but this by itself is insufficient to establish "express aiming."  In <u>Axiom Foods, Inc. v. Acerchem International, Inc.</u>, the Ninth Circuit explained that, following the Supreme Court's decision in <u>Walden v. Fiore</u>, allegations that a defendant knew of the plaintiffs' strong forum contacts and that it was foreseeable that plaintiffs would suffer harm in the forum "will not, on its own, support the exercise of specific jurisdiction." <u>Axiom</u>, 874 F.3d at 1069–70; <u>see</u> <u>AMA Multimedia</u>, 970 F.3d at 1209 ("In <u>Walden</u>, the Supreme Court rejected our prior decisions holding that the express aiming element could be satisfied by a defendant's knowledge that harm may be inflicted on a plaintiff in a particular forum."); <u>see, e.g.</u>, <u>GemCap Lending I, LLC v. Pertl</u>, No. CV 19-1472-JFW(PJWX), 2019 WL 6468580, at *9 (C.D. Cal. Aug. 9, 2019) ("At most, the evidence demonstrates that BancCentral and McNeil knew that GemCap was a California-based lender and that their actions might have an effect on GemCap in California."); <u>see also</u> <u>Picot</u>, 780 F.3d at 1214 ("a 'mere injury to a forum resident is not a sufficient connection to the forum.'" (quoting <u>Walden</u>, 571 U.S. at 290)).  "The plaintiff cannot be the only link between the defendant and the forum." <u>Walden</u>, 571 U.S. at 277.

Plaintiffs also argue that specific personal jurisdiction over Defendant Easton is proper because Eastone's alleged fraudulent conduct negatively affected Californians by halting the deliver of VENDYS device to California hospitals, clinics, medical facilities, research institutions, and educational institutions.  (Doc. No. 20 at 7.)  But the Supreme Court and the Ninth Circuit have instructed that the specific jurisdiction analysis "must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." <u>Picot</u>, 780 F.3d at 1214; <u>see</u> <u>Walden</u>, 571 U.S. at 285.  Thus, an assertion that it was foreseeable that third-parties would suffer harm in the forum – like an assertion that it was foreseeable that plaintiffs would suffer harm in the forum – by itself is insufficient to support specific personal jurisdiction over a defendant.  <u>See</u> <u>Free Conferencing Corp. v. T-Mobile US, Inc.</u>, No. 2:14-CV-07113-ODW, 2014 WL 7404600, at *11 (C.D. Cal. Dec. 30, 2014) ("[I]f <u>Walden</u> precludes personal jurisdiction on the basis of where the plaintiff suffers the harm, the alleged harm to non-parties is utterly

irrelevant."); see also Walden, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").

In sum, Plaintiffs have failed to satisfy the express aiming element of the purposeful direction test as to Defendant Eastone. As a result, Plaintiffs have failed to establish that the Court has specific personal jurisdiction over Defendant Eastone. See GemCap Lending I, 2019 WL 6468580, at *7-9 (concluding that the court lacked personal jurisdiction over the plaintiff's fraud and other tort claims against the defendants where the evidence merely showed that the defendants knew the plaintiff was based in California and that their actions might have an effect in California).

### ii.   Dual Officer Allegations

Defendant Eastone also argues that the Court lacks personal jurisdiction over it because Plaintiffs have failed to allege sufficient facts showing that the conduct at issue may be attributed to Eastone for the purposes of establishing specific jurisdiction. (Doc. No. 17-1 at 10-13.) Specifically, Eastone notes that the allegedly fraudulent conduct at issue was performed by individuals who were dual directors/officers at both Belter and Eastone during the relevant period, but Plaintiffs have failed to allege sufficient facts showing that these individuals were acting on behalf of Eastone, and not Belter, with respect to the relevant conduct. (See id.)

In United States v. Bestfoods, the Supreme Court explained: "'[D]irectors and officers holding positions with a parent and its subsidiary can and do "change hats" to represent the two corporations separately, despite their common ownership.' . . . [C]ourts generally presume 'that the directors are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary.'"  524 U.S. 51, 69 (1998).  Thus, a mere allegation that a corporate director/officer held positions with both a parent and its subsidiary without more is insufficient to demonstrate contact by the parent company with the forum state. See id.; see, e.g., GEC US 1 LLC v. Frontier Renewables, LLC, No. 16-CV-1276 YGR, 2016 WL 4677585, at *11-12 (N.D. Cal. Sept. 7, 2016) (dismissing parent company for lack of personal jurisdiction where the plaintiff failed to demonstrate that the

20-cv-01723-H-KSC

dual officers at issue were acting on behalf of the parent company); <u>Rojas v. Hamm</u>, No. 18-CV-01779-WHO, 2019 WL 3779706, at *10 (N.D. Cal. Aug. 12, 2019) (same); <u>Haller v. Advanced Indus. Computer, Inc.</u>, No. CV-13-02398-PHX-DGC, 2015 WL 854954, at *4 (D. Ariz. Feb. 27, 2015) (same and explaining that "[e]vidence beyond common officers is required"); <u>see also</u> <u>whiteCryption Corp. v. Arxan Techs., Inc.</u>, No. 15-CV-00754-WHO, 2015 WL 3799585, at *2 (N.D. Cal. June 18, 2015) ("[P]arent corporations are held directly or indirectly liable under California law for the acts of their subsidiaries only in unusual situations.").

In the FAC, Plaintiffs' claim for fraud against Defendant Eastone is premised on alleged representations made by Defendants Tong and Zhong. (<u>See</u> Doc. No. 16, FAC ¶¶ 58, 61, 76.) In previous filings, Plaintiffs have acknowledged that Defendants Tong and Zhong held positions with both Belter and Eastone during the relevant period. (<u>See</u> Doc. No. 8 at 6.) During the relevant time period, Defendant Tong was a member of Belter's board of directors and a member of Eastone's board of directors, and Defendant Zhong was also a member of Belter's board of directors and a member of Eastone's board of directors. (Doc. No. 17-2, He Decl. ¶14; <u>see also</u> Doc. No. 8 at 6.)

In the Court's October 20, 2020 order, the Court explained that the allegations in Plaintiffs' first amended complaint were insufficient to establish that Tong and Zhong were specifically acting on behalf of Eastone with respect to the relevant conduct. (Doc. No. 15 at 13-14 & n.6.) In an attempt to remedy this defect, Plaintiffs simply allege in the SAC that with respect to the relevant conduct, Defendant Tong and Zhong were acting "on behalf of Eastone" without alleging any factual support for these assertions. (<u>See, e.g.</u>, Doc. No. 16, FAC ¶¶ 58, 61, 76.) These conclusory allegations are still insufficient. Plaintiffs concede that Defendants Tong and Zhong held dual positions with Belter and Eastone, and all of the alleged fraudulent conduct at issue related to Belter's contractual

20-cv-01723-H-KSC

relationship with Meditex.[4]  Courts presume that directors/officers are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary.  BestFoods, 524 U.S. at 69.  Plaintiffs' conclusory allegations are insufficient to overcome that presumption.  As such, this provides an additional basis for dismissing Defendant Eastone for lack of personal jurisdiction.[5]

### C.   Conclusion

In sum, Plaintiffs have failed to establish that the Court has specific personal jurisdiction over Defendant Eastone.  Because the defects in the second amended complaint have previously been identified to Plaintiffs in the Court's prior order, (see Doc. No. 15 at 13-14 & n.6), and Plaintiffs were unable to overcome those defects through additional allegations, the Court declines to grant Plaintiffs further leave to amend.  See Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies.").  As such, the Court dismisses Defendant Eastone from the action for lack of personal jurisdiction.

## II.   Defendants Belter's Rule 12(b)(6) Motion to Dismiss

In the second amended complaint, Plaintiff alleges a claim for fraud against Defendants Eastone and Belter.  (Doc. No. 16, SAC ¶¶ 44-86.)  Defendants Eastone and Belter move to dismiss this fraud claim for failure to state a claim.  (Doc. Nos. 17-1 at 13-15, 18.)  As Defendant Eastone has been dismissed from the action for lack of personal

---

[4]   Importantly, Plaintiffs have dropped their claim for breach of contract against Defendant Eastone, and Plaintiffs do not assert that Defendant Eastone was a party to any of the contracts at issue.  (See Doc. No. 8 at 5; Doc. No. 15 at 6, 15; Doc. No. 16, SAC ¶¶ 22-26, 31.)

[5]   The Court notes that because these allegations are insufficient to establish that the relevant conduct may be attributed to Defendant Eastone, Plaintiffs have also failed to state a claim for fraud against Defendant Eastone for this same reason.  See, e.g., Bastidas v. Good Samaritan Hosp., No. C 13-04388 SI, 2014 WL 3362214, at *4-5 (N.D. Cal. July 7, 2014) (dismissing claim against parent company for failure to state a claim where the plaintiff failed to allege sufficient facts that would support direct liability for the parent company).

jurisdiction, see supra, the Court will evaluate whether Plaintiff has stated a claim for fraud against Defendant Belter.

      A.    Legal Standards for a Rule 12(b)(6) Motion to Dismiss

      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted.  See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief containing "a short and plain statement of the claim showing that the pleader is entitled to relief."  The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

      A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557).  Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

      In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the claimant.  See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014).  But, a court need not accept "legal conclusions" as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Further, it is improper for a court to assume the

claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. <u>See Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. <u>See Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995); <u>see Telesaurus</u>, 623 F.3d at 1003 (9th Cir. 2010).

B.    <u>Analysis</u>

Plaintiffs' claim for fraud against Defendants Eastone and Belter is four-part. Plaintiffs' claim for fraud is based on: (1) allegedly fraudulent misrepresentations made by Yanling Feng in March 2016; (2) allegedly fraudulent misrepresentations made by Defendants Tong, Zhong, Xu, and Wang in August 2018; (3) allegedly fraudulent misrepresentations by Tong and Zhong in May 2019; and (4) allegedly fraudulent misrepresentations in early 2020 regarding a patent application. (See Doc. No. 16, SAC ¶¶ 44-86.) In their motion to dismiss, Defendants Eastone and Belter only challenge Plaintiffs' allegations regarding the August 2018 and May 2019 misrepresentations.[6] (See Doc. No. 17-1 at 13-15; Doc. No. 18 at 1.)

The elements of fraud are (1) a material false representation, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4)

---

[6]    In its joinder in reply brief, Belter argues for the first time that the allegations of fraud based on representations in early 2020 regarding a patent application fail to state a claim because Plaintiffs are unable to satisfy the justifiable reliance element with respect those allegations of fraud. (Doc. No. 22 at 1-2 (citing SAC ¶ 81).) This specific argument was not raised in Eastone's motion or Belter's joinder to the motion. (See generally Doc. Nos. 17-1, 18.) The Court declines to address this specific argument as it was raised for the first time in a reply brief. <u>See Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); <u>Bazuaye v. I.N.S.</u>, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

20-cv-01723-H-KSC

that the other party 'actually and justifiably relied upon,' causing him injury."[7]  <u>Garcia v. Vera</u>, 342 S.W.3d 721, 725 (Tex. App. 2011) (citing <u>Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577 (Tex. 2001)); <u>see also</u> <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 638 (1992).  "Fraud by false promise" is a theory "by which the misrepresentation element of fraud can be proven."  <u>Columbia/HCA Healthcare Corp. v. Cottey</u>, 72 S.W.3d 735, 744 (Tex. App. 2002).  "A promise to do an act (or . . . refrain from doing an act) in the future is actionable fraud only when made with the intention, design and purpose of deceiving, and with no intention of performing the act.  Plaintiff must show that the promise was false at the time it was made."  <u>Airborne Freight Corp. v. C.R. Lee Enterprises, Inc.</u>, 847 S.W.2d 289, 294 (Tex. App. 1992); <u>see also</u> <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App. 4th 153, 158 (1991).

Further, Federal Rule of Civil Procedure "9(b)'s particularity requirement applies to state-law causes of action."  <u>Vess v. Ciba–Geigy Corp. USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 9, a plaintiff must plead fraud with particularity.  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  <u>Vess</u>, 317 F.3d at 1106 (quoting <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997)).  "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"  <u>Id.</u> (quoting <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994)).  "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud" are not.  <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989).

Defendant Belter argues that Plaintiffs' claim for fraud by false promise related to

---

[7]   As previously noted by the Court, it is unclear from the parties' briefing whether Plaintiffs' claim for fraud is governed by Texas law or California law.  (<u>See</u> Doc. No. 15 at 11-12 n.5; <u>see, e.g.</u>, Doc. No. 3-1 at 16-17; Doc. No. 6-1 at 19-20; Doc. No. 7 at 16.)  The Court need not resolve this conflict in law between the parties because in analyzing Plaintiffs' claim for fraud, the Court will cite to both Texas law and California law, and there does not appear to be a material difference between the two with respect to the elements at issue.  <u>See</u> <u>infra</u>.

the August 10, 2018 amendment should be dismissed for failure to state a claim because Plaintiffs have failed to adequately allege the intent element with respect to these allegations of fraud. (Doc. No. 17-1 at 13-15; Doc. No. 21 at 8-10; Doc. No. 18 at 1.) Rule 9(b) provides that when pleading a claim for fraud, "intent . . . and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Nevertheless, "'[a]lthough intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation.'" SVGRP LLC v. Sowell Fin. Servs., LLC, No. 5:16-CV-07302-HRL, 2017 WL 5495987, at *6 (N.D. Cal. Nov. 16, 2017) (quoting UMG Recordings, Inc. v. Global Eagle Entertainment, Inc., 117 F. Supp.3d 1092, 1109-10 (C.D. Cal. 2015)); accord Glob. Plastic Sheeting v. Raven Indus., No. 17-CV-1670 DMS (KSC), 2018 WL 3078724, at *4 (S.D. Cal. Mar. 14, 2018).

In the Court's October 20, 2020 order, the Court dismissed Plaintiffs' claim for fraud for failure to state a claim because Plaintiffs had failed to provide any factual allegations that showed that Defendants harbored an intention not to perform its obligations under the August 10, 2018 amendment at the time of formation. (See Doc. No. 15 at 12-13.) In the second amend complaint, Plaintiffs remedied this defect. In the SAC, Plaintiffs allege that in 2018, Belter had no intention of implementing the VENDYS project in China; rather, Belter's goal in entering into the agreement was to display strength and stability to investors, employees, and the media. (Doc. No. 16, SAC ¶¶ 66-67.) Plaintiffs explain that this display of strength and stability to the public was important at that time because the media had recently published very negative stories about Belter's former owner and President's embezzlement and imprisonment. (Id. ¶¶ 60, 66.) These factual allegations are sufficient to support Plaintiffs' assertion that Belter harbored an intention not to perform its obligations under the August 10, 2018 amendment at the time of formation.[8]

---

[8] The factual allegations at issue are also sufficient to provide the who, what, when, where, and how of the charged fraudulent conduct. (See Doc. No. 16, SAC ¶¶ 57-67.)

As such, the Court declines to dismiss Plaintiffs' fraud claim for failure to state a claim.

## <u>CONCLUSION</u>

For the reasons above, the Court grants Defendant Eastone's motion to dismiss for lack of personal jurisdiction, and the Court denies Defendant Belter's motion to dismiss for failure to state a claim.  The Court dismisses Defendant Eastone from the action for lack of personal jurisdiction.  The action will proceed against the remaining Defendants.

**IT IS SO ORDERED.**

DATED: February 9, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

20-cv-01723-H-KSC