UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MORTEZA NAGHAVI, MD, an individual; MEDITEX CAPITAL, LLC, a Delaware limited liability company; AMERICAN HEART TECHNOLOGIES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>BELTER HEALTH MEASUREMENT AND ANALYSIS TECHNOLOGY CO., LTD.,<br><br>Defendant. | Case No.: 3:20-cv-01723-H-KSC<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND MOTION TO WITHDRAW**<br><br>[Doc. Nos. 38, 43.] |

On November 26, 2019, Plaintiffs Dr. Morteza Naghavi, Meditex Capital, LLC ("Meditex"), and American Heart Technologies, LLC ("American Heart") brought this action against several defendants for claims arising out of an alleged breach of contract. (Doc. No. 1-4.) Belter Health Measurement and Analysis Technology Co., Ltd. ("Belter") is the only remaining defendant in the case. Now pending before the Court are two motions: a motion for default judgment against Belter filed by the Plaintiffs (Doc. No. 43) and a motion to withdraw as Belter's counsel filed by the law firm of Paul Hastings LLP

("Paul Hastings") (Doc. No. 38).  The Court held a hearing on both motions on July 25, 2022.  (Doc. No. 55.)  Naveen Madala appeared at the hearing on behalf of Plaintiffs, and Christopher McGrath appeared from Paul Hastings as attorney of record to Belter.  (Id.)  No other person appeared on Belter's behalf.  The Court will briefly summarize the factual allegations and procedural history in this case as necessary before turning to the merits of the pending motions.

## BACKGROUND

This dispute revolves around the marketing, manufacture, distribution, and sale of a cardiovascular medical device called "VENDYS."  (Doc. No. 15 at 2.)  Belter is a manufacturer and distributor of medical devices in China.  (Id. at 2-3.)  Plaintiff Meditex[1] allegedly entered into a series of agreements with Belter which granted Belter exclusive rights to market, distribute, and sell VENDYS in China.  (Id. at 3.)  In short, Plaintiffs allege that Belter violated these agreements by (i) failing to meet sales targets, (ii) underpaying the licensing fee for VENDYS, and (iii) not delivering VENDYS units to Plaintiffs in the United States.  (Id.)

The Court has dismissed several defendants from this action. (Doc. Nos. 10, 23, 34.) On November 19, 2020, Plaintiffs filed their Second Amended Complaint ("SAC") alleging breach of contract and fraud.  (Doc. No. 16.)  Belter and its corporate parent Eastone Century Technology Co., Ltd. ("Eastone") then moved to dismiss the SAC.  (Doc. No. 17.)  The Court dismissed all of Plaintiffs' claims against Eastone for lack of personal jurisdiction but denied dismissal of Plaintiffs' claims against Belter.  (Doc. No. 23.)  Belter filed an Amended Answer to the SAC and a counterclaim on April 6, 2021.[2]  (Doc. No. 27.)  Plaintiffs filed an answer to Belter's counterclaim on April 27, 2021.  (Doc. No. 29.)

---

[1]  Plaintiffs allege that Meditex and American Heart are "partners in a joint venture to manufacture, market and distribute cardiovascular devices" and that Dr. Naghavi founded both companies and serves as their "managing member."  (Doc. No. 16 ¶¶ 1-3.)

[2]  Court struck Belter's Amended Answer on May 25, 2022.  (Doc. No. 51.)

On September 8, 2021, Paul Hastings moved to withdraw as attorney of record for Belter. (Doc. No. 38.) Paul Hastings alleged that Belter (i) failed to pay its existing legal fees, (ii) is no longer willing to pay for future fees, (iii) consented to its withdrawal, and (iv) has ceased communications with it. (Doc. No. 38-1 at 2; Doc. No. 38-2, Decl. of Peter M. Stone ¶¶ 3, 5, 7-9.) The Court subsequently issued an order directing Belter to obtain substitute counsel by November 26, 2021. (Doc. No. 39.) The Court encouraged counsel at Paul Hastings to use their best efforts to ensure Belter obtained substitute counsel. (Id.) Paul Hastings provided the Court's order to Belter on October 28, 2021. (Doc. No. 40.)

Belter did not respond by the November 26, 2021 deadline. The Court subsequently issued an order extending the deadline for Belter to obtain substitute counsel to January 12, 2022. (Doc. No. 41.) The Court informed Belter that its failure to retain counsel and to comply with the Court's order risked the Court entering default judgment. (Id.) Paul Hastings provided this order to Belter on December 15, 2021. (Doc. No. 42.) Belter again failed to retain new counsel or otherwise respond to the order.

On March 2, 2022, Plaintiffs filed a motion for default judgment against Belter. (Doc. No. 43.) Paul Hastings provided this motion to Belter on March 7, 2022. (Doc. No. 45.) Paul Hastings also restated its request to withdraw as counsel and informed the Court that Belter has not communicated with it regarding the Court's orders. (Id.) Belter did not file an opposition or otherwise respond to Plaintiffs' motion for default judgment.

On April 18, 2022, the Court issued another order directing Belter to retain substitute counsel within 30 days. (Doc. No. 47.) The Court also struck Belter's counterclaim pursuant to Fed. R. Civ. P. 41(b) and 16(f) as an appropriate sanction for Belter's failure to comply with the Court's orders. (Id.) For a third time, the Court warned Belter that failure to comply with the Court's orders and to retain substitute counsel may result in default judgment. (Id.) Belter did not obtain substitute counsel or otherwise respond to the Court's order. The Court subsequently struck Belter's Amended Answer pursuant to Fed. R. Civ. P. 16(f) and 37(b)(2)(A)(iii) as an appropriate sanction for Belter's continual

failure to comply with the Court's orders. (Doc. No. 51.) The Court ordered Belter to obtain new counsel and for the new counsel to enter an appearance in this case on or before June 24, 2022 and warned Belter in clear terms that failure to comply with the Court's order would result in default judgment. (Id.) Despite the Court's repeated orders and warnings, Belter has still failed to comply with the Court's orders.[3]

## DISCUSSION

### I. Motion for Default Judgment

#### A. Entry of Default

Under Fed. R. Civ. P. 55(a), the Clerk of the Court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" In this case, the Clerk of the Court has not entered a default. However, "[b]ecause the court has the authority to enter a judgment by default, it impliedly has the power to perform the ministerial function assigned to the clerk of entering a default." Lehman Bros. Holdings, Inc. v. Millennium Mortg. Corp., 2010 WL 11596658, at *1 (C.D. Cal. 2010).

Belter participated in this action until approximately a year ago. Belter had filed two motions to dismiss along with its parent Eastone (Doc. Nos. 6, 17) and an answer to Plaintiffs' SAC and a counterclaim (Doc. No. 27). Belter's last filing before this Court occurred on July 22, 2021. (Doc. No. 36.) In the time since, Belter has failed to obtain substitute counsel or otherwise respond to the Court's orders.

Corporations may only appear and litigate in federal court through counsel. U.S. v. High Country Broad. Co., Inc., 3 F.3d 1244, 1245 (9th Cir. 1993). Since Belter has failed to comply with the Court's orders that to retain counsel, the Court has struck Belter's

---

[3] Christopher H. McGrath, an attorney for Paul Hastings LLP, entered an appearance as counsel of record for Belter on July 20, 2022. (Doc. No. 54.) Mr. McGrath entered an appearance in this case only to appear at the hearing on the motions. Paul Hastings still seeks to withdraw from its representation of Belter in this case.

Amended Answer and Counterclaim. (Doc. Nos. 47, 51.) Entry of default is an appropriate penalty for a corporate party's failure to obtain new counsel. See Vincent Consol. Commodities, Inc. v. Am. Trading & Transfer, LLC, 2008 WL 11508667, at *2 (S.D. Cal. 2008); Allergan Inc. v. Photomedex, Inc., 2008 WL 11343591, at *2 (C.D. Cal. 2008). Accordingly, the Court enters default against Belter with this order.

### B. Default Judgment as a Sanction

Plaintiffs move for default judgment against Belter on their claim for breach of contract for failure to retain counsel and failure to comply with the Court's orders.[4] (Doc. No. 43.) "[W]here a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55." Higano v. Channing & Assoc., LLC, 2010 WL 55891, at *1 (E.D. Cal. 2010) (citing Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2nd Cir. 2006)). A court may dismiss an action, with prejudice, based on a party's failure to obey a court order or local rules. Id. "District courts have inherent power to control their dockets [and] [i]n the exercise of that power they may impose sanctions, including, where appropriate, default or dismissal." Thompson v. Hous. Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986). However, the Court is mindful that "[d]ismissal and default judgment are only authorized in extreme circumstances." U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc., 857 F.2d 600, 603 (9th Cir. 1988). The district court must consider the following factors before dismissing a case or declaring a default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990). "Where

---

[4] Plaintiffs also assert a claim for fraud in their SAC, but Plaintiffs state in their motion for default judgment that they are not pursuing damages for fraud (Doc. No. 43 at 8) and Plaintiffs' counsel stated at the hearing that Plaintiffs are not pursuing default judgment on the fraud claim.

a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." Id.

As to the third factor, the Plaintiffs suffer prejudice if Belter's actions impair their ability to go to trial or threaten to interfere with the rightful decision of the case. See id. In this case, Belter's actions prevent a rightful decision. Belter must be represented by counsel, and it must comply with the Court's orders for the action to proceed. It has disregarded both requirements. Accordingly, the Court will be unable to reach a decision on the merits of Plaintiffs' claim. This results in substantial prejudice to the Plaintiffs.

For the fifth factor, the Court must consider whether less drastic sanctions are feasible. See id. at 1413. Paul Hastings affirmed that Belter understood that it must be represented by counsel to proceed with this litigation. (Doc. No. 38-2, Stone Decl. ¶ 6.) The Court warned Belter on four occasions that failure to retain counsel risks default judgment. (Doc. Nos. 39, 41, 47, 51.) It also cautioned Belter that if it failed to comply with the Court's order, it could face monetary sanctions. (Id.) The Court has not imposed monetary sanctions on Belter. In the Court's view, monetary sanctions are not a feasible alternative to default judgment. Although Belter participated in the case for nearly a year, its behavior in the past nine months indicates that it intends to ignore this suit and the Court. Belter has stopped communicating with Paul Hastings (Doc. No. 28-2, Stone Decl. ¶¶ 8-9.) and it has not responded to the Court's orders despite the service of those orders upon it (Doc. Nos. 40, 42, 48, 52). Since Belter is a foreign corporation, the Court considers monetary sanctions, even significant ones, to be unlikely to bring Belter back into the litigation. Further, Belter has not responded to the Court's lesser sanctions of striking Belter's Amended Answer and Counterclaim.

The record before the Court indicates that Belter's violations are "due to [its] willfulness, bad faith, or fault[.]" Hester v. Vision Airlines, Inc., 687 F.3d 1162, 1169 (9th Cir. 2012). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." Hyde & Drath v. Baker, 24 F.3d

1162, 1167 (9th Cir. 1994). It is within Belter's control to obtain replacement or otherwise respond to the Court's orders. Belter has not complied with the Court's orders despite numerous opportunities to do so and thus indicated that it does not intend to participate in this litigation any further. Default judgment is appropriate in these circumstances. See Vincent Consol. Commodities, 2008 WL 11508667, at *3.

### C. Default Judgment for Failure to Respond to the SAC

Default judgment may also be appropriate when a defendant fails to enter a timely response to a complaint. Since the Court struck Belter's Amended Answer from the case, there is currently no operative response to Plaintiffs' SAC. Accordingly, the Court will also evaluate whether default judgment is appropriate on these grounds.

It is within the district court's discretion to determine whether default judgment is appropriate. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court will consider the seven factors set forth by the Ninth Circuit in Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1982). The Court takes the complaint's well-pled factual allegations as admitted on consideration of a default judgment. Benny v. Pipes, 799 F.2d 489, 495 (9th Cir. 1986). Those allegations must be sufficient to establish plaintiff's entitlement to a judgment under the applicable law. Alan Neuman Prods. Inc. v. Albright, 862 F.2d 1388 (9th Cir. 1988).

#### 1. Prejudice to the Plaintiffs

The first Eitel factor—the possibility of prejudice to the Plaintiffs—weighs in favor of default judgment. As previously discussed, this case cannot proceed to the merits because of Belter's failure to participate and comply with the Court's orders. Thus, the plaintiffs would be denied a judicial determination on their claims. Johnson v. Labadeby, 2016 WL 4087061, at *2 (E.D. Cal. Aug. 2, 2016).

#### 2. Merits and Sufficiency of the Complaint

The second and third Eitel factors—the merits of plaintiffs' substantive claim and the sufficiency of the complaint—are often discussed jointly because of their close

relationship. See, e.g., PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. Dec. 27, 2002). The Ninth Circuit has suggested that these two factors require a plaintiff "state a claim on which the plaintiff may recover." Id. (citation omitted).

Plaintiffs assert a claim against Belter for breach of contract.[5] (SAC ¶¶ 33-43.) "The elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." Brooks v. Excellence Mortg., Ltd., 486 S.W.3d 29, 36 (Tex. App. Dec. 9, 2015).[6]

The Court begins with the first element. Plaintiffs allege the existence of multiple agreements between Meditex[7] and Belter. Plaintiffs allege that Meditex entered into an "Exclusive China Manufacturing, Marketing, Sales, and Distribution Agreement," also referred to as the "Original Agreement" by Plaintiffs, on March 18, 2016. (SAC ¶ 21.) On February 10, 2017, Meditex and Belter executed the "First Amendment" to the Original Agreement to provide Belter with patent rights on VENDYS in China. (Id. ¶ 23.) On May 2, 2017, Meditex and Belter executed a second "Exclusive China Marketing, Sales and Distribution Agreement" or the "New Sales & Marketing Agreement." (Id. ¶ 24.) Meditex then executed the "Second Amendment" to the Original Agreement which concerned a second patent in China. (Id. ¶ 26.) After Belter's management changed, Meditex and Belter executed the "Third Amendment" to the Original Agreement on August 10, 2018,

---

[5] Plaintiffs also assert a claim for fraud. (SAC ¶¶ 44-86.) For the reasons previously noted, the Court does not consider the fraud claim for the purpose of the motion for default judgment.

[6] The Court applies Texas substantive law in accordance with the choice of law provision in the parties' Manufacturing, Marketing, Sales, and Distribution Agreement. (Doc. No. 16, Ex. B at 7.)

[7] Although American Health and Dr. Naghavi do not appear to be signatories to the agreements, the agreements state that they are between Belter and Meditex and Meditex's "affiliated entities." (SAC, Exs. B, D, F, H, J.)

which required Belter to pay the remaining amount of the licensing fee and deliver additional VENDYS units to Meditex in order for Belter to maintain its distribution and marketing rights. (Id. ¶ 31.) Plaintiffs attached each of these agreements to the SAC and their motion for default judgment. In sum, Plaintiffs sufficiently allege numerous contractual agreements between Meditex and Belter.

As to the second element, Plaintiffs allege that Meditex "performed all conditions of the Original Agreement, New Marketing & Sales Agreement, First Amendment, Second Amendment, and Third Amendment." (Id. ¶ 34.)

Next, the Court turns to the third element—Plaintiffs' allegations that Belter breached their agreements. The New Marketing & Sales Agreement sets forth a minimum amount of sales revenue that Belter must reach "regardless of circumstances." (SAC, Ex. F at 3.) If Belter breaches the contract, "Belter shall be fully liable for the upfront fee and the minimum sales as the agreed damages defined upfront." (Id.) In total, the minimum sales amount for the five-year duration of the New Marketing & Sales Agreement is $21 million. (Id. at 5.) Plaintiffs allege that Belter failed to meet this minimum sales guarantee. (SAC ¶ 36.) The Third Amendment required Belter to pay the $250,000 licensing fee by October 31, 2018. (SAC, Ex. J. at 2.) Plaintiffs allege that Belter only paid $100,000 of this licensing fee. (SAC ¶¶ 37, 39.) The Third Amendment also required Belter to provide 100 units of VENDYS by December 31, 2018 and 248 units of VENDYS by June 30, 2019. (SAC, Ex. J at 2-3.) Meditex was not required to pay for the units or for shipping the units from Belter to Meditex. (Id.) Plaintiffs allege that Belter breached the Third Amendment by failing to provide 249 of the promised VENDYS units. (SAC ¶ 38.)

Finally, Plaintiffs allege a variety of damages from these breaches. Plaintiffs allege that they are owed (i) the remaining $150,000 of the licensing fee plus a penalty amount of $688,500; (ii) the market value of 249 VENDYS units, which Plaintiffs claim is $5,702,100; (iii) a revenue sharing payment of $2,520,000; and (iv) a contract breach penalty of $20,610,000. (SAC ¶¶ 36-43.)

The Court concludes that Plaintiffs properly stated a claim for breach of contract on which it may recover. Thus, these factors weigh in favor of the Court granting default judgment.

### 3. Sum of Money at Stake in the Action

Next, the Court considers the sum of money at stake in this case. Plaintiffs seek a default judgment of $30,903,600 in damages. Plaintiffs allege that Belter is a valuable company that was purchased in March 2017 for approximately $150 million. (SAC ¶ 48.) Still, Plaintiffs seek a large amount of damages, which generally weighs against default judgment. McKesson Medical-Surgical Inc. v. Custom Glass & Synthetic Design, LLC, 2021 WL 6112866, at *2 (D. Ariz. Dec. 27, 2021) ($350,000 in damages is "substantial" and weighs against default judgment); J & J Sports Prods., Inc. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ($114,200 in damages disfavors default judgment). However, "[w]hen the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." Huddly AS v. Suzhou Washeng Tech. Co., Ltd., 2022 WL 2289065, at *8 (N.D. Cal. Apr. 21, 2022) (citation omitted). "Ultimately, this factor balances the amount of money at stake in relation to the seriousness of defendant's conduct." Rosen v. Movie Times, Inc., 2021 WL 1338960, at *4 (N.D. Cal. Apr. 9, 2021). Although the sum of money that Plaintiffs seek is very substantial, it is also tied to the contractual agreements they entered with Belter. Thus, this factor does not weigh against default judgment despite the large amount of damages.

### 4. The Possibility of a Dispute Concerning Material Facts

There is little possibility of a dispute concerning the material facts in this case. Although Belter filed an answer and counterclaim, the Court struck those pleadings because of Belter's failure to comply with the Court's orders. (Doc. Nos. 47, 51.) Thus, those pleadings are not within this Court's consideration. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." Dr. JKL Ltd. V. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1051 (N.D. Cal. Oct. 28, 2010).

Thus, the Court must accept Plaintiffs' well-pled allegations, which are supported by the documents attached to Plaintiffs' SAC.

### 5. Excusable Neglect

It is unlikely that Belter's actions were the result of excusable neglect. Belter twice filed motions to dismiss in this case, filed an answer, and filed a counterclaim. (Doc. Nos. 3, 17, 18, 27.) It appears that Belter fully participated in this litigation until a few months after this Court dismissed Plaintiffs' claims against Belter's parent company, Eastone. The Court has provided Belter with numerous opportunities to comply with its orders over the last nine months. Counsel from Paul Hastings have represented that they have served Belter with the Court's orders and Plaintiffs' motion for default judgment. (Doc. Nos. 40, 42, 44, 48, 52.) Belter appears intent on abandoning the litigation and its defense of this action. Accordingly, this factor does not weight against default judgment. See J & J Sports Prods. Inc. v. Cervantes, 2018 WL 3702298, at *4 (E.D. Cal. Aug. 2, 2018); Dr. JKL Ltd., 749 F. Supp. 2d at 1051.

### 6. Policy of Favoring Decisions on the Merits

In general, default judgments are disfavored because of the Court's strong policy favoring decisions on the merits. Eitel, 782 F.2d at 1472. However, in this case, this policy does not weigh against default judgment because Belter's failure to defend this action or comply with the Court's orders renders a decision on the merits impractical and highly unlikely. See Cervantes, 2018 WL 3702298, at *4; Dr. JKL Ltd., 749 F. Supp. 2d at 1051.

In sum, the Eitel factors weigh in favor of default judgment against Belter for failure to litigate this case. Thus, the Court will enter default judgment on this basis in addition to its conclusion that default judgment is an appropriate sanction.

### D. Damages

The Court now turns to the issue of damages. Under Fed. R. Civ. P. 54(c), a default judgment cannot differ in kind or exceed the demand that is made in the pleadings. Fed. R. Civ. P. 8(a)(3) requires that the Plaintiffs make a specific demand for relief. Philip

Morris USA, Inc. v. Castworld Prods., Inc., 21 F.R.D. 494, 501 (C.D. Cal. Dec. 31, 2003). "A plaintiff must prove all damages sought in the complaint." Dr. JKL Ltd., 749 F. Supp. 2d at 1046. In Plaintiffs' motion, they seek $30,903,600 in damages for breach of contract, which is not different in kind or in amount than the relief they sought in their SAC. (Doc. No. 43 at 9; SAC at 18.) Plaintiffs assert their right to recover both expectation and liquidated damages.

The Court begins with Plaintiffs' claims for expectation damages. First, Plaintiffs seek $150,000 for unpaid licensing fees. Belter agreed to pay Meditex a one-time upfront payment of $500,000 for the right to file Chinese patents under Belter's name in the New Marketing & Sales Agreement. (Doc. No. 43-2, Decl. of Dr. Moreteza Naghavi ("Naghavi Decl."), at ¶ 9.) Belter subsequently agreed to pay the remaining $250,000 due for the licensing fee by October 31, 2018. (Naghavi Decl. ¶ 12, Ex. G at 2.) Dr. Naghavi states in his declaration that Belter failed to pay $150,000 of the licensing fee. (Naghavi Decl. ¶ 13.) Second, Plaintiffs assert that Belter breached the Third Amendment by failing to deliver 249 units of VENDYS. (Doc. No. 43-1 at 6.) In the Third Amendment, Belter "agrees to ship one hundred units of VENDYS-II JK-001V [to Meditex] . . . no later [than] December 31, 2018" and "Meditex shall not pay for these units or for shipping these units." (Naghavi Decl., Ex. G at 2.) Belter also "agrees to ship two hundred forty-eight (248) units of VENDYS-II JK001V [to Meditex] . . . by June 30, 2019" and Meditex "shall not pay for these units or for shipping these units." (Id. at 3.) Dr. Naghavi states that Belter failed to deliver 249 of these units in breach of the Third Amendment. (Naghavi Decl. ¶ 18.) He also states that this breach damaged Plaintiffs in the amount of $5,702,100 because each VENDYS unit is valued at $22,900. (Id. ¶¶ 20, 22.) Third, Plaintiffs seek $2,520,000 in damages for Belter's failure to meet the minimum sale guarantees set forth in the New Marketing & Sales Agreement. (Doc. No. 43-2 at 5.) In the New Marketing & Sales Agreement, Meditex and Belter agreed that Belter would have exclusive rights for sales and distribution of VENDYS for five years. Belter would compensate Meditex, in part, by

12

3:20-cv-01723-H-KSC

paying Meditex twelve and a half percent (12.5%) of total revenue made by Belter through the marketing, sales, and distribution of VENDYS. (SAC, Ex. F at 2.[8]) Belter also committed to a "minimum amount of sales revenue" for five years and agreed that it would be "responsible for delivering the minimum amount of sales regardless of circumstances[.]" (Naghavi Decl., Ex. E at 2.) Belter also agreed that if it breached the contract, it would be "fully liable for the [licensing fee] and the minimum sales as agreed damages defined upfront." (Id.) The minimum sales amount was equivalent to $21 million. (Id. ¶ 16, Ex. E at 3-4.) Thus, Dr. Naghavi states that Plaintiffs are owed $2,520,000 (12%[9] of $21 million) in damages for breach of the New Marketing & Sales Agreement. (Id. ¶ 16.) After review of the evidence, the Court concludes that the sworn statements in Dr. Naghavi's Declaration and the evidence attached to Dr. Naghavi's Declaration are sufficient to prove Plaintiffs' expectation damages for the purposes of this motion to dismiss. See uSens, Inc. v. Chongqing Junma New Energy Auto. Co., Ltd., 2022 WL 410938, at *3 (N.D. Cal. Feb. 10, 2022). Accordingly, the Court will award Plaintiffs a total of $8,372,100 in damages.

Next, the Court proceeds to Plaintiffs' claims for liquidated damages. Under Texas law, a liquidated damages clause is enforceable if (1) "the harm caused by the breach is incapable or difficult of estimation, and (2) the amount of liquidated damages called for is

---

[8] Plaintiffs reattached the exhibits to the SAC, including the New Marketing & Sales Agreement, to Dr. Naghavi's Declaration. It appears that the second page of the New Marketing & Sales Agreement was omitted from the document as it appears as an exhibit to Dr. Naghavi's Declaration, so the Court references the version of the New Marketing & Sales Agreement as attached to the SAC. Aside from the errant omission of one page, there does not appear to be a substantive difference between the exhibits.

[9] Plaintiffs state in their motion and Dr. Naghavi states in his declaration that Plaintiffs seek $2,520,000 (12% of $21 million). They do not address why the proper sum owed is not $2,620,000 (12.5% of $21 million). The Court will not speculate, rather, it will take the consistency of Plaintiffs' statements to mean that their request is not an error, but the intended amount of damages they seek.

a reasonable forecast of just compensation." Phillips v. Phillips, 820 S.W.2d 785, 788 (Tex. 1991). In addition to the two prongs articulated in Phillips, liquidated damages must not be punitive in design or in operation. BMB Dining Servs. (Willowbrook), Inc. v. Willowbrook I Shopping Ctr. L.L.C., 2021 WL 2231258, at *4 (Tex. App. June 3, 2021) (citation omitted). To do so, courts "must also determine whether 'the actual damages incurred were much less' than the liquidated damages imposed, measured at the time of the breach . . . when here is an 'unbridgeable discrepancy' between the provision as written and the reality of its application, the provision cannot be enforced." Id. (citations omitted). A contract provision which provides that one party pays the other some multiple of actual damages for breach of the agreement is not liquidated damages, but an unenforceable penalty. Phillips, 820 S.W.2d at 789. If the terms of the contract constitute an unenforceable penalty, the defendant is not required to raise the defense of penalty as an affirmative defense for the provision to be invalid because "courts will not enforce a plainly illegal contract even if the parties do not object." Id. (citation omitted).

Plaintiffs seek $22,531,500 in liquidated damages. (Doc. No. 43-1 at 5-6.) This amount is partly comprised of a $1,921,500 penalty for non-payment of the remaining $150,000 licensing fee at a rate of $1,500 per day from the date of the first missed payment through February 21, 2022. (Id. at 6.) The remaining $20,610,000 is a penalty for breach of "the entire relationship" that is equivalent to 900 VENDYS units at a value of $22,900 per each device. (Id.) Notably, the contractual provision of the First Amendment that applies the "900 VENDYS" penalty states: "[i]f Belter unilaterally cancels the agreement . . . or, directly or indirectly causes the relationship to terminate, then Belter must pay $900,000 or 900 units of JK-001V per each patent subject matter." (Naghavi Decl., Ex. C at 2.) The First Amendment does not state whether Belter must pay the greater or the lesser amount in the event of a breach.

The contractual provisions that Plaintiffs seek to enforce are unenforceable penalties because they fail to satisfy the Phillips prongs and the rule against punitive penalties. First,

as discussed, the damages for breach of contract are not incapable or difficult of estimation. The contract set forth specific payments that were required to be made to Meditex. The most challenging aspect of the damages calculation is a determination of the fair market value for VENDYS, but Dr. Naghavi represented that the amount is $22,900 per unit. (Naghavi Decl. ¶¶ 20, 22.)

Second, Plaintiffs have not demonstrated that the penalty is a reasonable forecast of just compensation. As to the late payment penalty, Plaintiffs' calculation is based on Belter failing to pay $150,000 for approximately 27 months. Plaintiffs provide no basis for the Court to conclude that a penalty award of 12 times the amount of the unpaid debt is reasonable. On its face, the penalty is equivalent to an extremely unrealistic interest rate on the principal balance owed to Meditex. Further, Plaintiffs do not state why a $20,610,000 penalty (or even the $900,000 penalty) is a reasonable forecast for just compensation for the dissolution of the contractual agreement. The Court notes that the parties entered into a limited agreement for five years. (Naghavi Decl., Ex. A at 2.) Certainly, Plaintiffs must have wished for those five years to be quite lucrative, but even if Belter had satisfied the minimum sales targets, Plaintiffs would have only received $2,620,000 in revenue sharing payments for that time period. In Phillips, 820 S.W.2d at 789, the Texas Supreme Court considered a contractual provision that provided multiples of the actual damages incurred to be an unenforceable penalty. That is true of both penalty provisions here. Likewise, the Court concludes that the penalty provisions are impermissibly punitive and excessive. See, FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P., 426 S.W.3d 59, 72 (Tex. 2014) (concluding that there is an "unacceptable disparity" between a $29 million liquidated damages award and actual damages of approximately $6 million).

Accordingly, the Court declines to award the $22,531,500 in liquidated damages that Plaintiffs seek because they constitute an unenforceable penalty under Texas law.

II. **Motion to Withdraw**

The Court will now address Paul Hastings' motion to withdraw as counsel of record for Belter. "An attorney may not withdraw as counsel except by leave of court, and the decision to grant or deny counsel's motion to withdraw is committed to the discretion of the trial court." Beard v. Shuttermart of Cal., Inc., 2008 WL 410694, at *2 (S.D. Cal. Feb. 13, 2008) (internal citations omitted). "In ruling on a motion to withdraw as counsel, courts consider: (1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case." Id.

The Court concludes that good cause for withdrawal exists. Paul Hastings states that Belter has ceased communicating with them and that the Belter's previous point of contact has left their law firm. (Doc. No. 28-2, Stone Decl. ¶¶ 8-9.) An inability to communicate with the client is often regarded as rendering counsel's continued representation to be unreasonably difficult. See, e.g., Beard, 2008 WL 410694, at *2; Orange Cty. Elec. Indus. Health & Welfare Tr. Fund v. Moore Elec. Contracting, Inc., 2011 WL 2940311, at *2 (N.D. Cal. July 20, 2011). Paul Hastings also states that Belter failed to pay outstanding legal fees, which courts have found to be a valid ground for withdrawal. Leatt Corp. v. Innovative Safety Tech., LLC, 2010 WL 444708, at *2 (S.D. Cal. Feb. 2, 2010). Finally, Paul Hastings seeks withdrawal with the consent of Belter. The withdrawal leaves Belter, a corporation, without counsel and unable to appear in this Court. CE Res., Inc. v. Magellan Grp., LLC, 2009 WL 3367489, at *2 (E.D. Cal. Oct. 14, 2009); CivLR 83.3(j). However, with this order, the Court enters default judgment against Belter; thus, there is no concern that granting the motion to withdraw will further delay the resolution of this case.

Given the Court's order on Plaintiffs' motion for default judgment, the Court grants Paul Hastings' motion for withdraw after Paul Hastings transmits the Court's judgment to Belter.

## **CONCLUSION**

For the foregoing reasons, the Court enters default against Belter and grants Plaintiffs' motion for default judgment. The Court awards Plaintiffs $8,372,100 in damages. The Court also grants Paul Hastings' motion to withdraw upon entry of the Court's judgment and Paul Hastings' transmission of the judgment to Belter.

**IT IS SO ORDERED.**

DATED: July 25, 2022

_____
MARILYN L. HUFF, Senior District Judge
UNITED STATES DISTRICT COURT